UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  0:19cv61113

CARLY BITTLINGMEYER,
individually and on behalf of all
others similarly situated,                                                  **CLASS ACTION**

      Plaintiff,                                                                        **JURY TRIAL DEMANDED**

v.

HOLCOMBE U.S.A., INC.

      Defendant.

                                     /

## CLASS ACTION COMPLAINT

Plaintiff, CARLY BITTLINGMEYER, brings this class action against Defendant, ASPIRE HOLCOMBE U.S.A., INC ("HUSA" or "Defendant"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.      This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA").

2.      Defendant owns  and  operate car dealerships in the state of Florida.

3.      In efforts to inject a new stream of revenue into its business, Defendant would often send marketing text messages providing various types of promotional offers and savings for future purchases of automobiles to consumers without first obtaining express written consent to send such marketing text messages as required to do so under the TCPA.

4.      These messages were sent using mass-automated technology through a third-party

company hired by Defendant to send marketing text messages on Defendant's behalf *en masse*.

5.	In sum, Defendant knowingly and willfully violated the TCPA, causing injuries to Plaintiff and members of the putative class, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

6.	Through this putative class action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

7.	Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendant. Plaintiff seeks up to $1,500.00 in damages for each call (text message) in violation of the TCPA, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

8.	Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which they are subject to the court's personal jurisdiction, and because Defendant provide and market their services within this district thereby establishing sufficient contacts to subject them to personal jurisdiction.  Further, Defendant's tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendant has sent the same text message complained of by Plaintiff to other individuals within this judicial district, subjecting Defendant to jurisdiction here.

## PARTIES

9.	Plaintiff is a natural person who, at all times relevant to this action, was a resident of

Broward County, Florida.

10.     Defendant is a Florida corporation with a principal office located at 440 South State Rd. 7, Planation, FL 33317. Defendant conducts, directs, markets, and controls its business operations all within the United States.

## THE TCPA

11.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

12.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

13.     The TCPA exists to prevent communications like the ones described within this Complaint. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

14.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

15.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

16.     In 2012, the FCC issued an order further restricting automated telemarketing calls,

3

requiring "prior express <u>written</u> consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

17.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent . . . and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

18.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

19.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

20.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)).

21.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is

true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

22.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

23.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

24.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

25.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

**Vicarious Liability**

26.     Under the TCPA, as interpreted by the FCC, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

27.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In the Matter of* Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 10 F.C.C Rcd. 12391, 12397 (1995).

28.     In 2008, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (2008) (specifically recognizing "on behalf of" liability in the context of a robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).

29.     In May of 2013, the FCC reinforced this issue. *See In the Matter of the Joint Petition Filed by Dish Network*, LLC, 28 F.C.C. Rcd. 6574 (2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). The FCC rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. n.107.

30.     The 2013 FCC Order further explained:

"To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to

force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

"[ ] In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). **However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services.** In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call. (emphasis added)

Id. at ¶¶ 46-47).

31.     Accordingly, it is undeniably clear, that an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call under a number of theories, including vicarious liability. Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the calls.

## BACKGROUND FACTS

32.     Defendant is in the business of buying and selling used cars from and to consumers in the state of Florida. Upon information and belief, Defendant has sent at least 10,000 thousand illegal text messages over the last four years preceding this lawsuit

33.     For instance, on December 25, 2015 Plaintiff received the following text messages depicted below:



34.     Defendant's text messages constitute telemarketing because they encourage the future purchase of Defendant's products by consumers.

35.     Plaintiff received the subject text messages within this judicial district and, therefore, Defendant violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

36.     At no point in time did Plaintiff provide Defendant with her express written consent to be contacted by text for marketing purposes.

37.     The impersonal and generic nature of Defendant's text messages demonstrates that

Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at \*11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at \*3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

38.     Specifically, upon information and belief, Defendant, through their direction, utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

39.     Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at \*2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

## CLASS ALLEGATIONS

### PROPOSED CLASS

40.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of

herself and all others similarly situated.

41.     Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years**
> **prior to the filing of this Complaint, received a marketing or**
> **promotional text message made through the use of any**
> **automatic telephone dialing system, from Defendant or anyone**
> **on Defendant's behalf, to said person's cellular telephone**
> **number, not for emergency purpose and without the recipient's**
> **prior express written consent.**

42.     Defendant and their employees or agents, Plaintiff's attorneys and their employees, the

Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and

claims for personal injury, wrongful death, and/or emotional distress are excluded from the Class.

Plaintiff does  not know the number of members in the Class, but believes the Class members number

in the several thousands, if not more.

### NUMEROSITY

43.     Upon information and belief, Defendant has placed automated calls to cellular telephone

numbers belonging to thousands of consumers throughout the United States without their prior express

consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members

is impracticable.

44.     The exact number and identities of the Class members are unknown at this time and can

be ascertained only through discovery. Identification of the Class members is a matter capable of

ministerial determination from Defendant's call records.

## COMMON QUESTIONS OF LAW AND FACT

45.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

>   (1) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;
>
>   (2) Whether Defendant can meet their burden of showing that they obtained prior express consent to make such calls;
>
>   (3) Whether Defendant conduct was knowing and willful;
>
>   (4) Whether Defendant are liable for damages, and the amount of such damages; and
>
>   (5) Whether Defendant should be enjoined from such conduct in the future.

46.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

47.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

48.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**SUPERIORITY**

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

50.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

51.     Plaintiff re-alleges and incorporates paragraphs 1-50 as if fully set forth herein.

52.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

53.     "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

54.     Defendant – or third parties directed by Defendant– used equipment having the capacity to dial numbers without human intervention to make marketing telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

55.     These calls were made without regard to whether Defendant had first obtained express written consent to make such calls. In fact, Defendant did not have prior express written consent to call the cell phones of Plaintiff and Class Members when the subject calls were made.

56.     Defendant therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make marketing telephone calls to the cell phones of Plaintiff and Class Members without their prior express written consent.

57.     All possible Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

58.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**COUNT II**
**Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

59.     Plaintiff re-alleges and incorporates paragraphs 1-50 as if fully set forth herein.

60.     At all times relevant, Defendant knew or should have known that their conduct as alleged herein violated the TCPA.

61.     Defendant knew that they did not have prior express written consent to send these text messages.

13

62.     Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls to their cellular telephones, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

63.     All possible Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

64.     As a result of Defendant violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiff, CARLY BITTLINGMEYER, on behalf of herself and the other members of the Class, prays for the following relief:

a.      A declaration that Defendant practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.      A declaration that Defendant violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c.      An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d.      An award of actual, statutory damages, and/or trebled statutory damages; and

e.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Date: May 1, 2019

Respectfully submitted,

By: /s/ *Jibrael S. Hindi*
Jibrael S. Hindi, Esq.
THE LAW OFFICE OF JIBRAEL S. HINDI, PLLC.
110 SE 6th Street
Ft. Lauderdale, FL 33301
Telephone: (954) 907-1136
Facsimile: (855) 529-9540
jibrael@jibraellaw.com